*Court of Common Pleas, Dauphin County, July 20th, 1855.*

KANFELT & McBARRON FOR USE OF KANFELT *v.* FISHER.

A transcript was entered from the record of a justice of the peace, who had died; his docket had been given to a justice without the district of the former magistrate, and upon his death returned to one within it. Held: That though the proceedings were somewhat irregular, the court will refuse to strike off the judgment. Where a judgment is very ancient, a *scire facias* should be issued upon it, or the execution will be set aside.

BY THE COURT.—The Courts of Common Pleas have a very limited power over the transcripts of justices, when filed of record for the purposes of lien. They cannot strike off the liens, or set aside the judgments (Daily *v.* Gifford, 12 S. & R. 72), nor open the judgment (Lacock *v.* White, 7 H. 495); and an order made to that effect is void. The extent of our authority is to ascertain if the justice had jurisdiction with proper power to certify the transcript. Where the magistrate, before whom the judgment is entered, gives a copy of his record, the latter question cannot arise; but in the present case, according to the conceded facts and the face of the transcript, the judgment was entered by one, and the record certified by another justice.

E. Heller was a justice of the peace for the borough of Middletown, at the time the judgment in this case was rendered in 1835, was re-elected in 1840, and died in 1842. After his death, the docket containing this and other judgments was handed to Joseph Walborn, a justice of Lower Swatara township, and remained in his possession until his death in 1842, when it was given by his administrator to J. J. Walborn, a justice for Middletown. In this proceeding it is very clear that the acts of Assembly were not complied with, as all the statutes contemplate that the docket shall go into the hands of another justice of the *same district* with the one who has died or removed. Had the

[Kanfelt & McBarron for use of Kanfelt *v.* Fisher.]

transcript been certified by Joseph Walborn, we must have treated it as emanating from one not entitled under any act of Assembly to certify it; consequently the motion to strike off must have prevailed. It is, however, issued by a magistrate of the proper borough, and the only question is, can we inquire whether the docket came by legitimate and regular course of delivery into his hands? That the act of Assembly has not been strictly complied with is very clear; but we cannot believe that a departure from the literal mandate of the law was intended to render the docket and all judgments thereon a nullity. J. J. Walborn could have proceeded by action of debt to recover this judgment, and Heller's docket would have been conclusive evidence of the indebtedness. He could have certified a transcript to the justice of another county, which would have been regular (1 W. & S. 414). For every legal purpose, except possibly the present, the docket was properly in his custody. And why not for this? We have already said that it was clearly erroneous and improper to hand it to the justice of another township; but on the error being discovered, it was the duty of those having possession of the records and papers to deliver them to the magistrate of the proper borough. It having travelled round by an improper and circuitous road, certainly cannot deprive those interested in judgments from recovering them. They are not in default. There is nothing in the acts under which these proceedings took place which requires the docket to be handed to the person elected to succeed the removed or deceased magistrate, but only to some neighboring justice of the district; and although in strictness this should have been done by the legal representative of Heller, yet if neglected by them, but done by another, the person holding it has jurisdiction. J. J. Walborn had a right to receive evidence that the docket from which this transcript was taken was that of Heller, and possibly to judge it to be such by inspection; and after certifying a copy to the prothonotary's office, we must take it for granted that he was satisfied it was truly the record. If he could not certify it, no other person could lawfully perform a duty which the acts of Assembly contemplated there should be at all times some person capable of legally performing, so as to secure the plaintiff in his lien. After parting with the record for several years, it may be very questionable whether the administrators of Heller, even if living and not discharged from their trust, could give a legally certified copy. It is also urged, that from the great antiquity of this judgment, and the length of time since any act was done showing a claim by the plaintiffs to the amount, the transcript should not have been filed without leave of the court, on a rule to show cause granted. For this position we are referred to Diamond *v.* Tobias, 2 Jo. 315, which contains a *dictum* from which such doctrine might be inferred. But there is not the

[Snyder *v.* Enterline.]

slightest analogy between the cases provided for in the rule of court and those coming within this act of Assembly. Independent of the rule of court, a judgment could be entered on a warrant of attorney at any time, however ancient; and our only control would be over the execution, where from the antiquity of the bond the law would presume it paid. We have the subject examined by judges of sound erudition and great experience, in Chambers *v.* Carson, 2 Wh. 372, and Lesley *v.* Nones, 12 S. & R. 419, when it was attempted to apply the doctrine to writs of *scire facias,* but without success. It is there held that permission to proceed at law need be obtained in no cases except those coming within the rule of court. The law has given the plaintiffs authority to file their transcript for the purpose of lien, without asking permission of the Court of Common Pleas, and we cannot clog it with conditions.

The party is not without remedy, where the law presumes the judgment paid from time or circumstances. Should the justice issue an execution without a *scire facias,* it would be our duty to reverse the writ on a *certiorari;* and should it be attempted in court we must set it aside. The writ of *scire facias* is the proper and legitimate mode of testing payment, whether the presumption arises from circumstances or lapse of time. The issue will then be tried by the proper tribunal on full notice. Although from the promise made eighteen years ago by George Fisher to pay this debt, and the silence of the parties for that period of time, I am strongly disposed to believe it paid, yet that question must be determined by the proper tribunal—a jury.

Motion denied.

*Etter, for plaintiff.*

*Fisher, for defendant.*